(No. 23160.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD KATSOVITZ *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1936.*

RISKIND & RISKIND, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Edward Katsovitz and Dave Silverman were convicted by a jury in the criminal court of Cook county of the armed robbery of Philip S. Seelig and sentenced to the penitentiary. The cause is here on writ of error.

The principal ground urged for reversal is that the verdict is against the clear weight of the evidence.

Shortly after 3:00 o'clock on the afternoon of November 8, 1934, two men held up and robbed Seelig's Tavern of about $660. The ground floor of the tavern is divided into two rooms. In the rear room were some tables and a men's lavatory. At the time of the robbery Seelig was in the front room, using the telephone. Howell, the bartender, was also in that room. Elzora Glenn, a patron, was having lunch at a table in the rear room. A. Albertine and a then unidentified man were sitting about three-fourths of the way back. A man later identified as Silverman came in the front door, confronted Seelig with an automatic pistol and compelled him to deliver the key to the cash drawer. The man who was sitting near Albertine arose, drew a gun and with the other robber marched Seelig, Howell, Albertine and Miss Glenn into the men's lavatory, where they remained until the robbers left, about three or four minutes later. None of them had ever seen the robbers prior to that time.

Silverman was arrested on the night of November 15, and on the same night Seelig identified him in a line-up of four or five men at the detective bureau. Katsovitz was arrested the next morning. Seelig, Howell and Miss Glenn were taken to the detective bureau. Silverman and Katsovitz were placed in a line-up of nine or ten men. Seelig again identified Silverman as the man who came in the front door and demanded the key of him, but he did not identify Katsovitz. Howell identified Katsovitz as the man who arose from the table and helped the other robber. He also pointed out Silverman, but testified that when he

first saw the man in the line-up he was not so sure of Silverman. Miss Glenn identified Katsovitz but did not recognize Silverman at that time. Later, at a preliminary hearing, and upon the trial, all three of the witnesses identified both defendants as the robbers. Howell testified that after the line-up he talked with Seelig about the case but did not talk with him about the identification of anybody. Miss Glenn testified that she had no conversation with Seelig after the line-up at the detective bureau and did not see him again until the preliminary hearing, and that she did not talk to Howell.

Seelig testified that Silverman was the man who held him up with the automatic pistol and started him toward the lavatory; that Katsovitz herded them into the lavatory with an automatic pistol, and that he was in the presence of Katsovitz a minute or two and in the presence of Silverman three or four minutes.

Howell testified that immediately prior to the robbery Katsovitz had been seated near Albertine, drinking beer, and was the man who marched them into the lavatory.

Miss Glenn testified that while she was eating her lunch Katsovitz went to the men's rest room and when he returned sat down again; that he passed her table on both occasions and she got a good look at him; that in about half a minute afterward he walked to the front of the place and then came back and sat down again; that about that time Silverman came in the door and covered Seelig with a gun; that Katsovitz, with a gun in his hand, ordered her away from her table and marched all of them to the lavatory, the door of which was open; that Katsovitz stood outside the door, and when the other man reported he had secured the money, Katsovitz closed the door and the robbers left. Meanwhile Albertine hid his money in the lavatory.

Officer Czernikowski testified that he arrested Silverman in a car in front of the detective bureau on the night

of November 15; that Silverman said he had come there to put up a bond for a friend; that he did not resist arrest; that he gave his home address; that he worked at his father's store, on Madison street; that he was working at the time of the alleged hold-up, and that he denied any participation in the robbery. Czernikowski further testified that he arrested Katsovitz in bed at his father's home; that in a search of his room no weapon was found; that on the night of the robbery Seelig identified Silverman; that the next day Howell and Miss Glenn pointed out Katsovitz but did not identify Silverman.

Albertine testified that he had been in the tavern fifteen or twenty minutes, seated close to one of the robbers, and had a good opportunity to view both of the hold-up men; that when the hold-up occurred the bar-tender was waiting for Seelig to change a five-dollar bill which the witness had given him; that a man went to the front and held up Seelig; that it was done so quickly he did not know what happened; that when one of the robbers pulled his gun he and the robber were facing each other; that he was called to the detective bureau and did not recognize the robbers in a line-up of five men, and that neither of the defendants was one of the men who committed the hold-up. On cross-examination he testified that when he went to the criminal court the first time he told the assistant State's attorney that he was not sure that the defendants were not the men who held up Seelig.

Joseph Katsovitz, father of defendant Edward Katsovitz, is a dealer in second-hand store fixtures. He testified that his son had been in his employ for about two years; that he worked with witness every day, driving a truck and helping to load and unload fixtures; that on the day of the hold-up, from about 9:00 o'clock A. M. to 6:00 o'clock P. M., he and his son were delivering counters to a man named Ilich, the proprietor of a fixture store in Blue Island; that he had purchased the fixtures from the National Tea

Company, and from November 5 to November 15 he and his son were engaged every day in moving the articles; that his son worked every week day until about 5:30 P. M., and that he was with witness the entire day on November 8.

The defendant Katsovitz denied participation in the hold-up and testified he worked with his father steadily all day on November 8 in delivering National Tea Company counters to Ilich.

M. Ilich, the proprietor of the Blue Island fixture store, testified that he had known defendant Katsovitz and his father for about nine months and had bought store fixtures from them; that he had done considerable business with Joseph Katsovitz; that on November 8 defendant and his father delivered five loads of fixtures to his store; that defendant drove the truck and helped to unload it; that the witness had a sales book record which he kept himself, and that the entry of the sale was made on the 7th to be delivered on the 8th. This record was introduced in evidence. The witness told of an accident during the delivery of a two-hundred-pound marble counter, which was dropped on his foot, and that Katsovitz helped to load one of the counters onto the car of a customer. He testified that Katsovitz and his son were working at intervals from 11:00 o'clock until a quarter to five; that four of the loads were delivered between the hours of 1:00 o'clock and 5:00 o'clock; that they were gone about an hour between loads and he could not say positively that defendant was there at the hour of 3:00 o'clock.

Nathan Silverman, father of defendant Dave Silverman, testified that he was in the second-hand clothing and tailoring business on West Madison street; that his son Dave lived at home and worked for him, serving customers who came into the store; that he knew Dave was there every day in November except Sunday and had worked every day from 9:00 A. M. till 6:00 P. M.

Dave Silverman testified that he had always lived at home with his parents; that he knew he did not miss a day in the store during November, and therefore knew he was not out of the store on the 8th. He denied participation in the robbery, and stated that when he was arrested he had gone to the bureau voluntarily to furnish bond for a friend who was charged with disorderly conduct.

The evidence shows that defendants have known each other for several years, and that they are good friends, have played ball together and have gone out with each other on an average of twice a week.

The law has committed to the jury the question of the credibility of the witnesses and of the weight of their testimony. Where there is sufficient evidence to convict and the testimony is merely conflicting, and it cannot be said that the verdict is manifestly against the weight of the evidence, this court will not substitute its judgment for that of the jury. A reasonable doubt is not raised merely because the evidence is conflicting or that there is some evidence of an alibi. The jury had an opportunity not afforded this court of seeing and hearing the witnesses and of observing their conduct and demeanor while testifying. The witnesses for the People were without interest and there is nothing in the record to discredit them. Most of the other witnesses had a great interest in the result of the trial. The questions of identification and of the whereabouts of the defendants at the time of the robbery were for the jury's determination. The verdict in this case is not manifestly against the weight of the evidence. On the whole the evidence is sufficient to warrant the verdict and we are not justified in disturbing it. *People* v. *Abelsky,* 359 Ill. 387; *People* v. *Fitzpatrick,* id. 363; *People* v. *Harrison,* id. 295.

The judgment is affirmed.      *Judgment affirmed.*